IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAREIK INC. d/b/a NICOLE MILLER PHILADELPHIA** *Plaintiff* | : : : : | **CIVIL ACTION** **NO. 20-2744** |
| v. | : : | |
| **STATE FARM FIRE AND CASUALTY COMPANY** *Defendant* | : : : : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                               MAY 5, 2021

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Mareik Inc., a fashion boutique, filed an amended complaint against Defendant State Farm Fire and Casualty Company ("State Farm"), pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, seeking a determination of the rights and duties arising from an "all-risk" Businessowners Coverage insurance policy issued by State Farm (the "Policy"). [ECF 16]. In the amended complaint, Plaintiff avers that it was forced to temporarily suspend its normal business operations to comply with local COVID-19-related shutdown orders, which resulted in a loss of business income. Plaintiff filed a claim under the Policy for this loss, which State Farm denied. Thereafter, Plaintiff commenced this action seeking declaratory relief.

Before this Court is State Farm's motion to dismiss for failure to state a claim upon which relief can be granted, filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). [ECF 19]. In its motion, State Farm argues that its Policy does not provide coverage for the type of

economic loss Plaintiff alleges to have suffered. Plaintiff opposes the motion.[1] [ECF 21]. For the reasons set forth herein, State Farm's motion to dismiss is granted.

**BACKGROUND**

When considering a Rule 12(b)(6) motion, a court must accept as true all factual allegations in the amended complaint and all reasonable inferences that can be drawn therefrom, viewed in the light most favorable to the non-moving party. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009)). The relevant factual allegations[2] are summarized as follows:

> Plaintiff is a retail fashion boutique in Philadelphia, Pennsylvania. In March 2020, the Mayor of the City of Philadelphia ordered the temporary closure of nonessential businesses due to the COVID-19 pandemic (the "Shutdown Order"). Plaintiff ceased operations in compliance with the Shutdown Order. In June 2020, the City of Philadelphia entered a "yellow phase" of reopening, allowing some nonessential businesses to resume operations under certain safety requirements. Plaintiff reopened in accordance with these requirements. However, due to the Shutdown Order and business operation restrictions, Plaintiff sustained a substantial loss of business income.
>
> Prior to the COVID-19 Pandemic, State Farm had issued Plaintiff an "all-risk" Businessowners Coverage insurance policy (the "Policy"). Shortly after the Shutdown Order was issued, Plaintiff, on March 21, 2020, submitted a claim for its business losses under the Policy's "Civil Authority" provision within the "Loss of Income and Extra Expense" endorsement (the "Endorsement"). State Farm denied the claim on the basis that Plaintiff did not suffer an "accidental direct physical loss to" its property, and because Plaintiff's reported loss fell within the Policy's enumerated exclusions.
>
> The "Civil Authority" provision in the Policy's Endorsement provides:
>
> **(a)** When a Covered Cause Of Loss causes damage to property other than property at the described premises, we will pay for the actual Loss Of Income you sustain and necessary Extra

---

[1] This Court has also considered State Farm's reply, [ECF 24], and its notices of supplemental authority. [ECF 25-29].

[2] The alleged facts set forth herein are drawn from the amended complaint, the Policy, and the "Loss of Income and Extra Expense" endorsement.

> Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile within the damaged property; and
>
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have access to the damaged property.

(Endorsement, ECF 19-1, Ex. A at SFFC 25) (internal quotations omitted).

Under the Covered Causes Of Loss section, the Policy provides that it "insures for accidental direct physical loss to Covered Property unless the loss is [subject to an exclusion]." (Policy, ECF 19-1, Ex. A at SFFC 45). "Covered Property" is defined to include "buildings, meaning the buildings and structures at the described premises" and "Business Personal Property located in or on the buildings at the described premises[.]" (Policy at 44).

Relevant here, "Section 1–Exclusions" provides:

1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   . . .

   **j. Fungi, Virus Or Bacteria**
   **(1)** Growth, proliferation, spread or presence of "fungi" or wet or dry rot; or

   **(2)** Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; […]

(*Id.* at 47).

3

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to "nudge[] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint may not merely allege a plaintiff's entitlement to relief—it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (internal quotations omitted). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A claim will not survive a motion to dismiss if, after construing the factual allegations in the light most favorable to the plaintiff, the court finds the plaintiff could not be entitled to relief. *Fowler*, 578 F.3d at 210. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Under Pennsylvania law, "[c]ontract interpretation is a question of law" for a court to decide. *4431, Inc. v. Cincinnati Insurance Companies*, 2020 WL 7075318, *8 (E.D. Pa. Dec. 3, 2020) (granting motion to dismiss based on insurance contract interpretation).

In deciding a Rule 12(b)(6) motion, a court must limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss," if the plaintiff's claims are based on those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Plaintiff's claims are based on the Policy and Endorsement which were attached as an exhibit to State Farm's motion to dismiss. Plaintiff does not dispute the authenticity of these documents. Accordingly, this Court will consider the Policy and Endorsement.

**DISCUSSION**

The issue before this Court is whether the Policy provides coverage for the type of economic loss Plaintiff suffered. In the amended complaint, Plaintiff seeks declaratory judgment that its economic loss, caused by the Shutdown Order's restrictions on its business operations, constitutes "direct physical loss to Covered Property" and, thus, entitles Plaintiff to coverage under the Policy. Specifically, Plaintiff relies on the "Civil Authority" provision of the Policy Endorsement for coverage. This provision provides that State Farm must pay the "actual Loss Of Income" sustained when "a Covered Cause Of Loss causes damage to property other than property at the described premises," provided that "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage" and "the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage . . . ." (Endorsement at 25). The "Covered Causes of Loss" provision specifies that State Farm "insure[s] for accidental direct physical loss to Covered Property" unless the loss is excluded. (Policy at 45). The Policy defines "Covered Property" as "buildings, meaning the buildings and structures at the described premises" and "Business Personal Property located in or on the buildings at the described premises[.]" (Policy at 44).

In its motion to dismiss, State Farm argues that Plaintiff's loss of business income does not constitute a "direct physical loss" within the meaning of the Policy and that, even if it did, the Policy exclusions preclude coverage. This Court will address these arguments in turn.

*Direct Physical Loss Coverage*

Pennsylvania courts apply "traditional principles of contract interpretation" to insurance contracts. *Kurach v. Truck Ins. Exchange*, 235 A.3d 1106, 1116 (Pa. 2020). As such, courts

are "to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement." *Wilson v. Hartford Casualty Co.*, 2020 WL 5820800, at *6 (E.D. Pa. Sept. 30, 2020). An insurance policy must be "read as a whole and construed in accordance with the plain meaning of its terms." *American Auto Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (internal citation omitted). When evaluating a denial of insurance coverage, a court determines: (1) whether the plaintiff's claim falls within the scope of coverage; (2) whether the defendant has asserted any affirmative defenses, such as a policy exclusion; and (3) whether there any applicable exemptions from the exclusion. *Wilson*, 2020 WL 5820800, at *6.

Here, State Farm moves to dismiss the amended complaint on the basis that Plaintiff's financial loss as a result of its COVID-19-related suspension of operations, due to the Shutdown Order, does not constitute "direct physical loss to Covered Property" as defined in the Policy. Plaintiff counters that its "inability to use the business" constitutes a direct physical loss. (Pl.'s Response, ECF 21, at 24).

Applying traditional principles of contract interpretation to the Policy, this Court finds that Plaintiff's proffered interpretation of the insurance provision is contrary to the plain and ordinary meaning of "direct physical loss." The term "direct physical loss" is not specifically defined in the Policy. Therefore, it must be construed in accordance with the plain meaning of the words. "Direct" means "stemming immediately from a source," without "an intervening agency, instrumentality, or influence." "Direct," Merriam-Webster (2021), available at https://www.merriam-webster.com/dictionary/direct. "Physical" means "having material existence; perceptible especially through the senses and subject to the laws of nature." "Physical," Merriam-Webster (2021), available at https://www.merriam-webster.co m/dictionary/physical; *see also Kahn v. Pennsylvania National Mutual Casualty Insurance Company*, 2021 WL 422607, *5 (M.D. Pa. Feb. 8, 2021)

("Physical" means "[o]f, relating to, or involving *material* things; pertaining to *real, tangible* objects" (citing Black's Law Dictionary (11th ed. 2019)) (emphasis added). In contrast, the term "Covered Property" *is* defined in the Policy as "the buildings and structures at the described premises" and "Business Personal Property located in or on the buildings at the described premises[.]" (Policy at 44). Thus, examining the contested phrase as a whole, this Court finds that "direct physical loss to Covered Property" means an immediate, actual, identifiable, and material impact to the structure of a building or to tangible items located therein. Further, relying on the ordinary meaning of "physical loss" as it relates to property, courts have "widely held [the term] to . . . preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Kahn*, 2021 WL 422607, at *5 (quoting 10A Couch on Ins. § 148:46 (3d ed. 2020)) (internal quotations omitted). Therefore, this Court concludes, as other courts have,[3] that the term

---

[3] This Court notes recent decisions of its sister courts in other circuits which have interpreted the same Policy at issue and have reached the same conclusion. *See Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Company*, 2020 WL 5258484, *8 (E.D. Mich. Sept. 3, 2020) ("'[D]irect physical loss to Covered Property' is an unambiguous term that plainly requires Plaintiff to demonstrate some tangible damage to Covered Property."); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 359 (W.D. Tex. 2020) (". . . Plaintiffs fail to plead a direct physical loss.").

Courts interpreting similar policy language within the United States Court of Appeals for the Third Circuit ("Third Circuit") have also held the same. For example, in *Port Authority of New York & New Jersey v. Affiliated Insurance Co.*, 311 F.3d 226, 236 (3d Cir. 2002), the Third Circuit held that "physical loss" under an "all-risk" insurance policy occurred when "the presence of large quantities of asbestos in the air of a *building* is such as to make the *structure* uninhabitable and unusable . . . . However, if asbestos is present in components of a *structure*, but is not in such form or quantity as to make the *building* unusable, the owner has not suffered a loss." 311 F.3d at 236 (emphasis added). While *Port Authority* applied New York and New Jersey law, a subsequent panel of the Third Circuit predicted that the Pennsylvania Supreme Court would adopt similar reasoning to the question of whether loss of use may constitute "physical loss." *See Motorists Mutual Insurance Co. v. Hardinger*, 131 F. App'x 823, 826 (3d Cir. 2005) ("We predict that the Pennsylvania Supreme Court would adopt a similar principle as we did in Port Authority."). *Port Authority* supports the conclusion that a physical loss requires some actual, material effect to the structure of a building. *See Kahn*, 2021 WL 422607 at *6 ("The key terms in *Port Authority* are 'building' and 'structure' . . . *Port Authority* clearly distinguished between a *building* (not a business) that was physically unusable and one that was contaminated but still physically safe to inhabit"); s*ee also, e.g., Humans and*

"direct physical loss to Covered Property" unambiguously requires some immediate impact on the actual, material premises. *See*, *e.g.*, *Kahn*, 2021 WL 422607, at *5.

As such, the term "direct physical loss to Covered Property" is unambiguous within the context of the Policy and can only be interpreted to mean an immediate, actual, identifiable, and material impact to the structure of a building or to tangible items located therein. Plaintiff does not, however, claim this type of covered loss. Though Plaintiff's claim is for loss of business income, the alleged loss is not in any way connected to any alleged immediate, actual, identifiable, and material impact to any Covered Property. Clearly, the "Civil Authority" provision only insures for business losses caused by a "Covered Cause Of Loss," defined as a "direct physical loss to Covered Property." Consistent with this reading, Plaintiff's loss is not, and cannot be, a "direct physical loss" within the provisions of the Policy.

Despite the aforementioned plain and ordinary meaning of the term "direct physical loss," Plaintiff also argues that the damage need not be visible or tangible to constitute a covered "direct physical loss." To support this contention, Plaintiff relies on a series of cases, including: *Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (finding unpleasant odor constituted physical damage); *Motorists Mutual Ins. Co.*, 131 F. App'x. at 825-27 (finding water contamination constituted physical damage); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co.*

---

*Resources, LLC*, 2021 WL 75775, *7 (E.D. Pa. Jan. 8, 2021) (". . . the loss and the bar to operation from which it results must bear a causal relationship to some *physical condition* of or on the premises and that the premises must be uninhabitable and unusable.") (emphasis in original); *Kessler Dental Associates, P.C. v. Dentists Insurance Company*, 2020 WL 7181057, *4 (E.D. Pa. Dec. 7, 2020) ("These provisions make clear that there must be some sort of physical damage to the property."); *Newchops Restaurant Comcast, LLC v. Admiral Indemnity Company*, 2020 WL 7395153, *5 (E.D. Pa. Dec. 17, 2020) ("Loss of utility is not structural or physical."); *4431, Inc. v. Cincinnati Insurance Companies*, 2020 WL 7075318, *12 (E.D. Pa. Dec. 3, 2020) (". . . there is no physical component to Plaintiffs' loss; there are no allegations that any physical conditions of or on the covered premises have been altered in a way that has resulted in or affected Plaintiffs' loss."). This Court agrees with these courts that "physical loss" requires some kind of actual, identifiable, material impact on the physical structure of a building or items contained therein.

*of Am.*, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (finding ammonia damage constituted physical damage). Plaintiff's reliance on these cases is misplaced, as they are clearly distinguishable from the facts presented here. Notably, in each case Plaintiff cites, the insured sought coverage for losses caused by *actual, physical contaminants* in the air or water that were expressly alleged to have caused the suspension of the insured's business operations (*i.e.*, water, ammonia, and odor). Here, Plaintiff expressly does *not* attribute any loss to an actual contaminant in the air or water but, rather, attributes its loss to the city's Shutdown Order requiring the temporary suspension of non-essential business operations. Plaintiff could not be any clearer in this regard, specifically contending that "[g]overnment orders **and not a virus** is (*sic*) what caused Plaintiff's business losses." (Pl.'s Response, ECF 21, at 17) (emphasis added). Therefore, this Court finds that Plaintiff's financial loss is *not* resulting from or due to any "direct physical loss" under the Policy.

*Virus Exclusion*

State Farm also moves to dismiss the amended complaint on the basis that Plaintiff's loss is excluded by the Policy's Virus Exclusion. As the insurer, State Farm "bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage[.]" *State Farm Fire & Casualty Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (citation omitted). The Virus Exclusion excludes coverage for losses:

> which would not have occurred in the absence of . . . [g]rowth, proliferation, spread or presence of . . . virus . . . , bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease . . . regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces.

(Policy at 46-47). Plaintiff argues that the Virus Exclusion is ambiguous and not clearly meant to apply to pandemic-related shutdowns.

Under Pennsylvania law, when policy language is "clear and unambiguous, a court must give effect to its language." *Toppers Salon & Health Spa, Inc. v. Travelers Property Casualty Co. of America*, 2020 WL 7024287, at *2 (E.D. Pa. Nov. 30, 2020) (citing *Kvaerner Metals Div. of Kvaerner, U.S. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)). A policy's language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense[.]" *Id.* (quoting *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). Courts, however, should not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Construction Co.*, 735 A.2d at 106. A provision is not ambiguous "simply because the parties do not agree on construction of the provision." *Brian Handel D.M.D., P.C. v. Allstate Insurance Co.*, 2020 WL 6545893, at *2 (citing *Weisman v. Green Tree Ins. Co.*, 670 A.2d 160, 161 (Pa. Super. Ct. 1996)). If a provision is ambiguous, it should be "construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005).

Plaintiff argues that the Virus Exclusion is ambiguous because it does not specifically include the word "pandemic" and, therefore, can be interpreted to exclude pandemics. Under the plain language of the exclusion, Plaintiff's argument fails. The Virus Exclusion precludes coverage for losses caused by "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Policy at 47). The coronavirus that has caused the COVID-19 Pandemic is plainly a virus that induces physical distress, illness, or disease. Though the word "pandemic" is not used in the Policy, there is no reasonable basis to find a "pandemic exception" within the plain meaning of this express exclusion. *See Lang v. Meske*, 850

A.2d 737, 740 (Pa. Super. Ct. 2004) (holding that when "the terms of a written contract are clear, this Court will not rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used").

Plaintiff also argues that because its financial loss was caused by the Shutdown Order, rather than the coronavirus itself, the Virus Exclusion cannot apply. This argument, too, is incorrect. The Virus Exclusion expressly provides that a loss is not covered if it "would not have occurred in the absence of" the "virus . . . regardless of . . . whether other causes acted concurrently or in any sequence with the excluded event to produce the loss . . . ." (Policy at 46-47). Here, even if Plaintiff's financial loss resulted in part due to the Shutdown Order, it is clear that the loss would not have occurred in the absence of the coronavirus. As such, Plaintiff's loss is excluded by the clear, unambiguous language of the Virus Exclusion.

*Regulatory Estoppel*

Plaintiff further contends that the motion to dismiss should be denied because Plaintiff is entitled to discovery before dismissal, under the doctrine of regulatory estoppel. In Pennsylvania, the doctrine of regulatory estoppel is intended to "protect the integrity of the courts by preventing litigants from playing fast and loose with the judicial system by adopting whatever position suits the moment." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192 (Pa. 2001) (internal citation and quotations omitted). In *Sunbeam Corp.*, an insurer represented to a regulatory agency that a change in policy language would not result in a significant decrease in coverage from the prior policy language, then argued the opposite position when sued for coverage by a policyholder. *Id.* The Pennsylvania Supreme Court held the insurer could not "switch[] legal positions to suit [its] own ends." *Id.* at 1192-93. Thus, a party invoking regulatory estoppel must show "that the opposing party made a statement to a regulatory agency and later adopted a position contrary to

11

the one presented to the regulatory agency." *Newchops Restaurant Comcast LLC*, 2020 WL 7395153 at *9 (citing *Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008)).

As evidence of State Farm's allegedly inconsistent position, Plaintiff cites a 2006 Insurance Services Office, Inc. ("ISO") circular entitled "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria." The circular reads, in relevant part:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.
>
> In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

(ISO Circular LI-CF-2006-175, New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria, ISO (July 6, 2006), at 6, available at https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf).

Plaintiff argues that insurers, including State Farm, presented this circular to state regulatory agencies in an attempt to hide the insurers' true intent of reducing coverage. However, the language of the ISO circular does not support Plaintiff's contention. To the contrary, the ISO indicates that "the specter of pandemic" led them to present "an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms." (ISO Circular at 6). Even assuming that State Farm presented this circular to regulatory agencies, State Farm's present argument is directly aligned with the circular's position that pandemic-related losses were not intended to be covered.[4] Because the ISO circular does not support Plaintiff's contention that

---

[4] Other courts considering Plaintiff's same regulatory estoppel argument have also found insurers' virus exclusions to be aligned with the ISO's position. *See, e.g., Brian Handel*, 2020 WL 6545893 at *5

State Farm changed its position, as required by the doctrine of regulatory estoppel, Plaintiff is not entitled to discovery prior to dismissal.

**CONCLUSION**

For the reasons set forth herein, this Court finds that Plaintiff has failed to state a claim upon which relief or declaratory judgment can be granted.  Therefore, State Farm's motion to dismiss is granted and Plaintiff's claims are dismissed.  An appropriate Order follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.

---

("Since defendant does not take a contradictory position to the one made to regulatory agencies, the doctrine of regulatory estoppel does not apply to this action."); *Fuel Recharge Yourself, Inc. v. Amco Insurance Company*, 2021 WL 510170, *3 (E.D. Pa. Feb. 11, 2021) ("The fatal flaw in this argument is that Defendant's litigation position does not diverge from the representations made by the insurance trade groups to regulators."); *Humans & Resources, LLC*, 2021 WL 75775 at *9 ("In reading the foregoing statements, this Court is flatly unable to discern how they are contradictory or contrary to the position which Defendant takes here."); *Newchops Restaurant Comcast, LLC*, 2020 WL 7395153 at *9 (". . . the insureds have not alleged that [the insurer] is now contradicting those statements. On the contrary, [the insurer's] position here is consistent with the ISO's statement.").